IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


VICKI J. BERRY,

        Plaintiff                 Civil No. 06-6103-MO

        v.                        OPINION & ORDER

MICHAEL J. ASTRUE,[1]

        Defendant.


**MOSMAN, J.,**

    Plaintiff Vicki Berry seeks judicial review of the Social Security Commissioner's final decision denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The Commissioner's final decision is reversed and remanded for further proceedings consistent with this opinion.

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. She is substituted as the defendant in this action pursuant to Fed. R. Civ. P. 25(d)(1) and 20 U.S.C. section 405(g).

1 - OPINION AND ORDER

**BACKGROUND**

Born in 1953, Ms. Berry completed a general equivalency degree in 1992. Between 1992 and 1998, she worked as a circuit board assembler. She reports working as a lead worker in this position. Ms. Berry filed an application for DIB on June 19, 2002, alleging disability since January 1, 2001, due to polymyalgia rheumatica. She must show that her disabling condition began before her date last insured, which is December 31, 2001. *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998); 20 C.F.R. § 404.101.

Ms. Berry's application was denied initially and upon reconsideration. On February 4, 2005, a hearing was held before an Administrative Law Judge ("ALJ"), followed by a supplemental hearing on July 20, 2005, to obtain additional medical expert testimony. The ALJ subsequently found Ms. Berry could return to her past relevant work and therefore she is not disabled. The Appeals Council denied review on March 24, 2006, making the ALJ's decision the agency's final decision. Ms. Berry seeks review of this finding.

**DISABILITY ANALYSIS**

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. Ms. Berry challenges the ALJ's evaluation of the evidence and her conclusions at step four.

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If she is, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment"

that meets the twelve month duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant does not have such a severe impairment, she is not disabled. *Id.*

At step three, the ALJ determines if the severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is determined to equal a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments. 20 C.F.R. § 404.1520(e), Social Security Ruling ("SSR") 96-8p, 1996 WL 374180. The ALJ uses this information to determine if the claimant can perform past relevant work at step four. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant cannot perform past relevant work, the ALJ must determine if the claimant can perform other work in the national economy at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. § 404.1520(a)(4)(v).

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the analysis reaches the fifth step, the burden shifts to the Commissioner to show jobs within the claimant's RFC exist in the national economy. *Id.* If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1566.

## **THE ALJ'S FINDINGS**

At step two in the sequential proceedings, the ALJ found Ms. Berry's "muscular skeletal

pain/fibromyalgia/residuals of carpal tunnel surgery/obesity" "severe." Tr.[2] 17. The ALJ also found that these impairments did not meet or equal a "listed" impairment at step three in the proceedings. *Id.* The ALJ subsequently found Ms. Berry's testimony "not totally credible" and evaluated her RFC prior to December 31, 2001 as follows:

> From the alleged onset date until the claimant's date last insured, the claimant retained the residual functional capacity to perform a reduced range of light exertional level work. The claimant could lift up to 20 pounds occasionally and 10 pounds frequently. Frequent forceful gripping with the hands was precluded. Kneeling, squatting, and bending were limited to an occasional basis.

*Id.*

At step four, the ALJ found Ms. Berry could perform her past relevant work. *Id.* Accordingly, the ALJ determined Ms. Berry was not disabled under the Act at any time through the date of her decision. Tr. 18.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r for Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). This court weighs "'both the evidence that supports and detracts from the ALJ's conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (quoting *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1986)). The reviewing court "may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.

---

[2] "Tr." refers to the Transcript of Social Security Administrative Record filed in this case.

2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Magallanes*, 881 F.3d at 750; *see also Batson*, 359 F.3d at 1193.

## DISCUSSION

Ms. Berry contends the ALJ failed to properly assess her testimony, failed to properly credit a treating physician's opinion, and erroneously found that she could return to her past relevant work at step four. These submissions assert that Ms. Berry's physicians retrospectively found her disabled by fibromyalgia, rather than polymyalgia rheumatica, prior to December 31, 2001.

### I.    Analysis: Retrospective Medical Opinions

The Commissioner has explicitly addressed the evaluation of a claimant's onset date and evaluation of impairments with non-traumatic origins, stating the relevant factors include the individual's allegations, the work history, and the medical evidence. SSR 83-20, 1983 WL 31249, at *1. The Commissioner also explains that a claimant's work history "is frequently of great significance in selecting the proper onset date." *Id.* The Commissioner emphasizes: "Particularly in the case of slowly progressive impairments, *it is not necessary for an impairment to have reached listing severity* (i.e. be decided on medical grounds alone) *before onset can be established*. In such cases, consideration of vocational factors can contribute to the determination of when the disability began . . . ." *Id.* (emphasis added). The Commissioner offers specific instructions for inferring the onset date of a progressive disease:

> The available medical evidence should be considered in view of
> the nature of the impairment (i.e., what medical presumptions can

> reasonably be made about the course of the condition).  The onset
> date should be set on the date when it is most reasonable to
> concluded from the evidence that the impairment was sufficiently
> severe to prevent the individual from engaging in SGA (or gainful
> activity) for a continuous period of at least 12 months or result in
> death.  Convincing rationale must be given for the date selected.

*Id.* at *3.

Ninth Circuit authority also addresses evidence produced after a claimant's insured status expires.  "[R]eports containing observations made after the period for disability are relevant to assess the claimant's disability." *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988).  The *Smith* court explicitly found that "medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration condition." *Id.*  Ms. Berry's credibility and medical record are evaluated below in light of this standard.

## II.     Credibility

Ms. Berry contends the ALJ failed to give clear and convincing reasons for discrediting her testimony.  Evaluation of Ms. Berry's testimony is especially important under SSR 83-20, discussed above, as Ms. Berry's testimony must support her assertion that she was unable to perform substantial gainful activity prior to her December 2001 date last insured.

### a.     Credibility Analysis

Once a claimant has shown an underlying impairment, the ALJ may not reject symptom testimony without specific findings showing clear and convincing reasons for doing so. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1986).  The ALJ furthermore may not reject symptom testimony because the medical record does not corroborate the severity of the claimant's reported symptoms.  *Id.*  The ALJ's credibility findings must be "sufficiently specific to permit the

reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). In making credibility findings, the ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. Additionally, the ALJ may employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id*.

    **b.    Credibility Discussion**

The ALJ's credibility analysis first states:

> The claimant's allegations of disabling impairments, whether based on physical or mental disorders, cannot be wholly accepted as credible. Her retrospective allegations are disproportionate to the objective findings in the medical record. The claimant's reported activities, despite her impairments, after her condition worsened, are more consistent with those of an individual able to sustain light work than they are of a totally disabled person's. Although she had help with or rested during some household chores, she continued to drive, prepare meals (Exhibit 9E, pages 2 and 3) and go grocery shopping.

Tr. 16.

In her brief challenging the ALJ's credibility analysis, Ms. Berry submits that,

> [T]he ALJ stated that [her] testimony generally described her perceived condition after her symptoms had increased, rather than during the period in which she was insured . . . on the contrary, the record shows that [she] reported increased aching in her body in February of 2001, well before her date last insured.

Pl.'s Op. Br. at 12. This submission does not address Ms. Berry's hearing testimony and any limitations it establishes prior to December 31, 2001.

7 - OPINION AND ORDER

Ms. Berry's indicated citation shows that on February 22, 2001, her treating physician, Dr. Ewanchyna, assessed a third degree forearm burn, hypertension, carpal tunnel syndrome, and "generalized osteoarthritis." Tr. 218. Regarding her osteoarthritis, Dr. Ewanchyna wrote: "She has generalized osteoarthritis of the hips and of the knees, where she had surgery in the past and she feels she is having increased aching throughout her body." *Id.* Upon examination, Dr. Ewanchyna noted no tenderness outside Ms. Berry's wrists, which he found related to her carpal tunnel syndrome. *Id.*

The ALJ subsequently identified additional reasons for finding Ms. Berry not credible. These reasons include Ms. Berry's activities of daily living, her failure to utilize pain medications during the period in question, and her failure to produce evidence from treating or examining physicians that Ms. Berry's reported myalgias precluded work activity.

Ms. Berry's challenge to this assessment asserts that the ALJ erroneously relied upon "activities of daily living" reports Ms. Berry and her mother submitted to the record. Pl.'s Op. Br. at 13. The indicated reports show that on July 17, 2002, six months after her December 2001 date last insured, Ms. Berry noted that she could prepare small meals and complete chores such as laundry, washing dishes, sweeping, and mopping. She indicated that these activities were curtailed due to pain. Also in July 2002, Ms. Berry's mother wrote that Ms. Berry rarely leaves her house and no longer participates in activities such as bingo, trips, or shopping.

Daily activities inconsistent with alleged disability may support a negative credibility finding, but sporadic completion of daily living activities are not equivalent to full time employment. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). A claimant "need not

vegetate in a dark room" to be found disabled. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (internal quotation marks and citation omitted).

The medical record corroborates Ms. Berry's testimony that she experienced unspecified myalgias prior to December 31, 2001. This evidence includes Ms. Berry's reports of pain to her treating physician, Dr. Ewanchyna, and his associated clinical examination. Tr. 217, 218. The ALJ therefore may not discredit Ms. Berry simply because objective medical evidence does not match the symptom testimony she alleges. *Smolen*, 80 F.3d at 1282. The objective medical evidence need only *support* the claimant's symptom testimony. It does not have to fully establish or prove it. The ALJ's statement that Ms. Berry's "retrospective allegations are disproportionate to the objective findings of the medical record" misapplies the relevant legal standard and is clearly erroneous.

For these reasons the ALJ failed to articulate substantiated clear and convincing reasons for her credibility determination. The findings that the medical evidence does not support Ms. Berry's symptom testimony and that her symptoms are compatible with "light" work are not sufficiently specific. *Doddrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993), *see also Orteza*, 50 F.3d at 750. Accordingly, her credibility determination is not sustained.

## II.    Medical Source Statements

Ms. Berry submits that a treatment note from her treating physician, Dr. Ewanchyna, in February 2001, establishes that she was disabled by fibromyalgia prior to December 31, 2001. Pl.'s Op. Br. at 11. She also challenges the ALJ's omission of Dr. Ewanchyna's March 2005 disability opinion. *Id.* at 10-11.

The ALJ considered notes produced by treating physician Dr. Ewanchyna:

9 - OPINION AND ORDER

> Dr. Ewanchyna's medical records indicate that he saw the claimant twice in the last quarter of 2000, once for a severe sinus headache and once for right foot pain . . . next, on February 22, 2001, he treated the claimant for a third degree burn. On that date, in addition to assessing the claimant with a healing third degree forearm burn, he also assessed the claimant with hypertension, carpal tunnel syndrome . . . and generalized osteoarthritis.

Tr. 11A. The ALJ subsequently noted that Dr. Ewanchyna treated Ms. Berry in March 2001, for flank or back pain presumed to be a musculoskeletal strain. *Id.* The ALJ went on to review Dr. Ewanchyna's notes produced between September 2001 and January 2002, without mention of musculoskeletal aches and pains.

### a.  Analysis

Generally, a treating physician's testimony is given more weight than that of an evaluating or reviewing physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ must provide "clear and convincing reasons" for rejecting the uncontradicted opinion of a treating physician. *Id.* Likewise, the opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexmaining physician. *Id.*

### b.  Treating Physician Dr. Ewanchyna

#### i.  *Dr. Ewanchyna's Treatment Notes*

Dr. Ewanchyna's February 2001 note indicates Ms. Berry experienced symptoms attributable to fibromyalgia in February 2001. In March 2001, Dr. Ewanchyna noted Ms. Berry's report of flank pain, which he assessed as "likely muscle strain." Tr. 217. Dr. Ewanchyna subsequently noted non-specific "myalgias" between February 2002 and December 2003. Tr. 204, 206-13. Between January 2003 and December 2004, Dr. Ewanchyna assessed Ms. Berry's pain as fibromyalgia and prescribed narcotic pain therapies. Tr. 321–30, 347.

10 - OPINION AND ORDER

### ii.   Dr. Ewanchyna's Disability Opinion

On March 18, 2005, Dr. Ewanchyna submitted a letter to Ms. Berry's counsel:

> I have had the opportunity to review my medical file of [Ms. Berry] and support her in pursuing a claim for disability. In reviewing particularly the chart note of 2/22/01, I commented on her generalized pain of wrists, knees, and hips and an "increased aching throughout her body." Often, fibromyalgia waxes and wanes as a disease, and beginnings of a disability can only be seen retrospectively. In my medical opinion, I feel her disability from Fibromyalgia began prior to December 31, 2001. A specialist from Oregon Health Sciences University assesses [sic] this individual in 2003, and remarked on her history of having pain for the last 5 years, which would be 1998 onwards.

Tr. 353.

Ms. Berry submits that this letter establishes that she was disabled from fibromyalgia from December 31, 2001. Pl.'s Op. Br. at 10-11.

A physician's opinion must be supported by adequate notes, records, or clinical findings. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Dr. Ewanchyna's clinical notes suggest Ms. Berry exhibited symptoms attributed to fibromyalgia before her December 2001 date last insured. Tr. 330. However, disability opinions are reserved for the Commissioner. 20 C.F.R. § 404.1527(e)(1). The ALJ was therefore not bound by Dr. Ewanchyna's disability opinion, but she should have considered his opinion that Ms. Berry's fibromyalgia impeded her ability to perform work activity prior to December 31, 2001.

### c.   **Examining Physician Dr. Deodhar**

Furthermore, specialist Dr. Deodhar at Oregon Health Sciences University suggested that Ms. Berry experienced fibromyalgia symptoms prior to December 2001. Dr. Deodhar's April 2003 report noted Ms. Berry's reports of aches and pains "5 years ago," and that "she cannot

11 - OPINION AND ORDER

exactly remember how her other aches and pains started, but she definitely remembers that injuries to her ankles and knee reduced her day-to-day activity, worsened her movement, and she gained 40 to 50 pounds over a 5-year period." Tr. 262.

The ALJ's review of Dr. Deodhar's notes states, "he explained to the claimant . . . that her symptoms were suggestive of fibromyalgia." Tr. 13. The ALJ then noted, without citation, the American College of Rheumatology's "trigger point" criteria for fibromyalgia diagnosis, and concluded that Dr. Deodhar's assessment of Ms. Berry's trigger point response "was not truly definitive because she also reported being tender everywhere else pressure was applied." *Id.*

No treating or examining physician questioned Dr. Deodhar's trigger point analysis. The ALJ's lay assessment of Dr. Deodhar's evaluation fails to apply the proper standards for evaluating examining physician opinions. For this reason, her analysis of Dr. Deodhar's opinion is not sustained.

        d.        **Ms. Berry's Mental Impairments**

Ms. Berry also asserts the Commissioner erred in failing to find she suffered from a "severe" mental impairment, but she offers no argument in support. Pl.'s Op. Br. at 15; *see also* Pl.'s Reply Br. The ALJ found Ms. Berry had "at most, mild difficulties in maintaining social functioning and in maintaining concentration/persistence/pace," as well as mild restriction of activities of daily living. Tr. 15. Because this court remands for further proceedings, the ALJ must, upon remand, also reconsider her mental impairment findings in light of the remand instructions below.

In summary, the record suggests Ms. Berry demonstrated possible fibromyalgia symptoms during the relevant period. The ALJ erroneously found Ms. Berry's symptom

12 - OPINION AND ORDER

testimony "disproportionate" to the medical record. The ALJ should have appropriately considered Dr. Ewanchyna's opinion that Ms. Berry suffered from fibromyalgia before December 31, 2001.

## REMAND

After finding the ALJ erred in her decision denying Ms. Berry's application for benefits, the court must determine the proper remedy. This court has discretion to remand for further proceedings or for immediate payment of benefits. *Harman v. Apfel*, 211 F.3d 1172, 1178-79 (9th Cir. 2000). The issue turns on the utility of further proceedings. *Id.* at 1178. A remand for an award of benefits is appropriate "when no useful purpose would be served by further administrative proceedings or when the record has been fully developed" and the evidence is not sufficient to support the Commissioner's decision. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989) (internal citation omitted).

Here, the ALJ improperly rejected Ms. Berry's testimony and selectively evaluated clinical notes produced by Drs. Ewanchyna and Deodhar. Ms. Berry also argues the ALJ erred in omitted some limitations testified to by the vocational expert. Specifically, she submits the vocational expert testified that she would be unable to perform work in the national economy if she required frequent breaks to recline or accumulated two or more absences per month. Pl.'s Op. Br. at 14. An ALJ need not rely on unsupported vocational testimony. *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001). These limitations identified by Ms. Berry are not supported by her testimony. Rather, she only testified that she experienced pain in 2001. She described having pain while sitting in August and September 2001, and needing a two-day rest period during holiday preparations in December 2001. Tr. 387, 391-92, 421-22.

13 - OPINION AND ORDER

This court may not the credit limitations suggested by Ms. Berry's counsel as they have no evidentiary basis. However, in light of the ALJ's improper credibility finding, this court credits the symptom testimony Ms. Berry offered in her submissions to the record and at her hearing, and remands for further vocational testimony regarding any additional limitations this testimony establishes. *Hammock v. Bowen*, 879 F.2d 498, 503 (9th Cir. 1989).

Further proceedings are necessary for the ALJ to properly consider limitations arising from Ms. Berry's testimony. If warranted, the ALJ may solicit additional testimony from Ms. Berry or a physician in order to clarify the effects of Ms. Berry's testimony. The ALJ must then revise the RFC analysis accordingly and obtain additional vocational expert testimony regarding Ms. Berry's workplace limitations. The ALJ must subsequently make adequate step four and step five findings incorporating any properly supported testimony.

## CONCLUSION

In conclusion, the ALJ failed to offer clear and convincing reasons for finding Ms. Berry not credible. Likewise, the ALJ erred in omitting Ms. Berry's documented myalgias prior to her date last insured from the analysis of the medial evidence. Thus, I find the Commissioner's non-disability finding is not based on correct legal standards or supported by substantial evidence, and this case is REVERSED and REMANDED FOR FURTHER PROCEEDINGS consistent with this opinion under sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED.

Dated this  15th  day of May, 2007.

/s/ Michael W. Mosman
Michael W. Mosman
United States District Judge

14 - OPINION AND ORDER